IN THE UNITED STATES DISTRICT COURT
                  FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


ALEIDA ANDUJAR,                     )
                                    )
                Plaintiff,           )
                                    )
        v.                          )       1:15CV1093
                                    )
CAROLYN W. COLVIN,                  )
Acting Commissioner of Social       )
Security,                           )
                                    )
                Defendant.           )


            **MEMORANDUM OPINION AND RECOMMENDATION**
                **OF UNITED STATES MAGISTRATE JUDGE**

    Plaintiff, Aleida Andujar, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Supplemental Security Income ("SSI"). (Docket Entry 2.) Defendant has filed the certified administrative record (Docket Entry 8 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 10, 12; see also Docket Entry 11 (Plaintiff's Memorandum), Docket Entry 13 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

## I. PROCEDURAL HISTORY

Plaintiff applied for SSI. (Tr. 263-68.)[1] Upon denial of that application initially (Tr. 57-69, 86-89) and on reconsideration (Tr. 70-85, 97-106), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 107-10). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 28-56.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 14-27.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 13), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1. [Plaintiff] has not engaged in substantial gainful activity since June 7, 2012, the application date.

2. [Plaintiff] had the following severe impairments: HIV infection; obesity; and schizophrenia.

. . .

3. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

---

[1] Although Plaintiff claimed March 1, 2001 as her onset date of disability (see Tr. 263), eligibility for SSI payments begins in the month following the date of application. See 20 C.F.R. § 416.335. Thus, the ALJ's decision covers the time period from the protective filing date of Plaintiff's SSI application, June 7, 2012, to the date of the ALJ's decision, June 18, 2014. (See Tr. 17.)

2

4.  . . . [Plaintiff] has the residual functional capacity to perform medium work . . . with mental restrictions. [Plaintiff] can lift/carry and push/pull 50 pounds occasionally and 25 pounds frequently. She can sit, stand, and walk for up to six hours each in an eight-hour workday. She can perform simple, routine, repetitive tasks in a non-production setting. She can have occasional interaction with coworkers and supervisors. She can have incidental interaction with the public.

. . .

5.  [Plaintiff] has no past relevant work.

. . .

9.  Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform.

. . .

10. [Plaintiff] has not been under a disability, as defined in the [] Act, since June 7, 2012, the date the application was filed.

(Tr. 19-26 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

## A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the

4

[Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a

---

[2] The Act "comprises two disability benefits programs. The Disability Insurance Benefits Program provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

5

'sequential evaluation process' to determine whether a claimant is disabled." Id.

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment,

---

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

6

the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. See id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

[5] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

### B. Assignments of Error

Plaintiff contends that the Court should overturn the ALJ's finding of no disability on these grounds:

(1) "the ALJ [failed] to fulfill[] his duty, under 42 U.S.C. [§] 423(d)(5)(B), to consider all evidence available in the case record and fully develop the complete medical history" (Docket Entry 11 at 3 (bold font omitted)); and

(2) "the ALJ's [RFC] [did not] compl[y] with the requirement, under Social Security Ruling 96-8p, to perform a function-by-function assessment" (id. at 8 (bold font omitted)).

Defendant disputes Plaintiff's assignments of error, and urges that substantial evidence supports the finding of no disability. (See Docket Entry 13 at 5-14.)

#### 1. Duty to Develop the Record

In Plaintiff's first assignment of error, she contends that "[t]he ALJ failed to fulfill his duty to consider all evidence available in the case record and fully develop the complete medical history." (See Docket Entry 11 at 3.) In particular, Plaintiff asserts that the ALJ "acknowledged [during the hearing] that there was medical evidence of record . . . that needed translation" from Spanish into English, and stated that he would "try to get those [records] translated after the hearing." (Id. at 4 (citing Tr. 30-34).) According to Plaintiff, the ALJ thereafter "failed to supplement the record with a translation of the medical evidence."

8

(Id.) Plaintiff further maintains that, following the hearing, her attorney "made a written request to the ALJ" that "[was] tantamount to a renewed request to have the foreign records translated and made a part of the administrative record." (Id. at 4-5 (emphasis added) (citing Tr. 527).) Plaintiff posits that the ALJ's failure to translate the documents constitutes "harmful error because it strongly suggests that the ALJ did not take this evidence of inpatient psychiatric hospitalization and mental health treatment into consideration, thereby failing to complete a full and fair review to satisfy his duties under the administrative review process." (Id. at 5.) Plaintiff's arguments fall short.

"[T]he ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate." Cook v. Heckler, 783 F.2d 1168, 1173-74 (4th Cir. 1986) (emphasis added) (citations omitted). The ALJ discharges his duty to develop the record where "the record is adequate to make a determination regarding a disability claim." France v. Apfel, 87 F. Supp. 2d 484, 490 (D. Md. 2000); accord Kersey v. Astrue, 614 F. Supp. 2d 679, 693 (W.D. Va. 2009). Accordingly, in order to demonstrate that the ALJ failed to develop the record, a claimant must show that "evidentiary gaps" existed that prejudiced his or her rights, Blankenship v. Astrue, No. 3:11-cv-00005, 2012 WL 259952, at *13

9

(S.D.W. Va. Jan. 27. 2012) (unpublished) (citing Marsh v. Harris, 632 F.2d 296, 300 (4th Cir. 1980)), and that he or she "could and would have adduced evidence that might have altered the result,'" id. (quoting Carey v. Apfel, 230 F.3d 131, 142 (5th Cir. 2000)). The ALJ in this case fulfilled his duty to develop the record.

As an initial matter, the ALJ did not unequivocally "acknowledge" at the hearing that medical evidence of record remained untranslated. The following discussion occurred between the ALJ and Plaintiff's counsel:

> ALJ: . . . [A]fter the hearing there are some things that have not been translated. And I'm going to try to get those translated after the hearing.
>
> ATTY: That's what I wanted to talk about.
>
> . . .
>
> Like for example, in Exhibit 8F --
>
> . . .
>
> -- down in the axis one, two, three, four, and five, the translator there wrote illegible. I just wanted to tell you I could read it. They were ICD-9 and DSM codes.[6] They were numbers. So they'll say like 290.00. And this person couldn't read it, but I could.
>
> . . .

---

[6] ICD-9 refers to the International Statistical Classification of Diseases and Related Health Problems (World Health Org. 9th rev. 1975), which provides an international system of diagnostic codes for classifying diseases. See https://www.cdc.gov/nchs/icd/icd9.htm (last visited Dec. 15, 2016). Similarly, DSM refers to the Diagnostic and Statistical Manual of Mental Disorders, which "defines and classifies mental disorders." See www.dsm5.org/psychiatrists/practice/dsm (last visited Dec. 15, 2016).

| | |
|---|---|
| ALJ: | Why don't you submit the numbers then? |
| ATTY: | Okay. |
| . . . | |
| ALJ: | [S]ubmit that and then we'll try to figure that out. But some of the other things, I guess, just have not been translated yet, so. |
| ATTY: | Okay. <u>Your clerk told me she sent everything out for translation, so I was under the impression these were even though they all say illegible by the government translator</u>. |
| ALJ: | Well, for example, it says 9F, 10F needs to be translated. And 11F. <u>You're saying they don't need to be translated?</u> . . . If you look at the case documents. Well, let me look. I mean, some of it's in Spanish. . . . <u>And if [my clerk] can persuade me that they've been translated, I'd like to see the translations</u>. |

(Tr. 30-34 (emphasis added)). As this exchange reveals, the ALJ initially <u>believed</u> that some of the medical evidence of record had not been translated from Spanish into English (see Tr. 30-31, 33 (referring to Exhibits 9F through 11F)); however, Plaintiff's counsel advised the ALJ that his clerk had "sent everything out for translation" (Tr. 33). Thereafter, the ALJ indicated that he would confirm <u>whether</u> any records remained needing translation with his clerk. (See id.)

Moreover, the subsequent correspondence from Plaintiff's counsel to the ALJ enclosing counsel's interpretation of the ICD-9 and DSM codes (and their corresponding diagnoses) (see Tr. 527-72), does not, contrary to Plaintiff's assertion in brief (see Docket

11

Entry 11 at 5), constitute a "renewed request" that the ALJ procure the translation of additional medical evidence from Spanish into English.

Regardless of the ALJ's initial statements at the hearing regarding the need for further translation, the record conclusively demonstrates that English language translations exist for <u>all</u> of the Spanish language medical evidence of record. (<u>See</u> Tr. 331-38, 389-408; <u>compare</u> Tr. 409-11, <u>with</u> Tr. 453-55; Tr. 412-16, <u>with</u> Tr. 456-58; Tr. 417-22, <u>with</u> Tr. 459-64.) Thus, the ALJ did not neglect his duty to fully and fairly develop the record by failing to secure the translation of medical evidence of record.

Although translated versions of the medical evidence exist, the translator apparently could not decipher many of the handwritten sections of the Spanish documents. Thus, in the English-language versions of those documents, the translator often inserted the word "[ILLEGIBLE]." (<u>See</u> Tr. 331-38, 389-408, 453-65.) Thus, even though not argued by Plaintiff's counsel in brief (<u>see</u> Docket Entry 11 at 3-11) (but acknowledged by Plaintiff's counsel at the hearing (<u>see</u> Tr. 33)), the undersigned will address whether those legibility issues warrant relief.

Even given the illegible portions of the medical records, Plaintiff has established no basis for remand, because Plaintiff has not shown that resulting "evidentiary gaps," if any, prejudiced her rights. <u>See</u> <u>Blankenship</u>, 2012 WL 259952, at *13 (citing <u>Marsh</u>,

12

632 F.2d at 300). Despite the areas the translator found illegible, the mental health treatment records in Exhibits 1F, 8F, and 13F (which contains translated records from Exhibits 9F and 10F) still reflect, in most cases, (1) the dates of treatment; (2) the results of mental status examinations; (3) diagnoses;[7] and (4) Global Assessment of Functioning ("GAF")[8] scores. (See Tr. 331-38, 389-408, 456-64.)[9] Moreover, the ALJ ordered physical and mental consultative examinations (see Tr. 339-42, 344-47), and relied upon the opinions of two state agency psychologists as to Plaintiff's mental RFC (Tr. 25, 65-67, 79-81).

Under such circumstances, the ALJ had a sufficiently developed record to render a disability determination. See Fuerst v. Colvin, No. 1:15CV1054, 2016 WL 5957602, at *3 (M.D.N.C. Oct. 13, 2016) (unpublished) (Webster, M.J.) ("[E]ven assuming the records in question are only partially legible, the record still permits a

---

[7] Although the translator found many of the ICD-9 and DSM diagnosis codes illegible (see generally Tr. 389-408, 459-64), as discussed above, Plaintiff's counsel at the hearing advised the ALJ he could read many of the codes (see Tr. 31-32) and, in fact, provided many of those codes and the corresponding diagnoses in a communication to the ALJ after the hearing (Tr. 527-72).

[8] The GAF is a numeric scale from 0 to 100 representing a clinician's judgment of an individual's social, occupational and school functioning "on a hypothetical continuum of mental health-illness." American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. text rev. 2000) ("DSM-IV-R"). A new edition of the leading treatise discontinued use of the GAF. See American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. 2013).

[9] Exhibit 9F reflects Plaintiff's hospitalization in Puerto Rico for back pain. (See Tr. 409-11, 453-55.) Plaintiff does not allege that a back impairment contributes to her disability (see Tr. 296; see also Docket Entry 11 at 3-12), and thus Plaintiff has not demonstrated how any illegible portions of Exhibit 9F prejudiced her claim for benefits.

disability determination. This is because, for example, the agency arranged for [the p]laintiff to participate in consultative physical and mental health examinations. Thus, the record was adequately developed to allow the ALJ's determination." (internal citation omitted)), recommendation adopted, slip op. (M.D.N.C. Nov. 15, 2016) (Eagles, J.); Field v. Commissioner of Soc. Sec., No. 6:11-CV-49, 2013 WL 693106, at *4 (W.D. Va. Feb. 6, 2013) (unpublished), recommendation adopted, No. 6:11-CV-00049, 2013 WL 693094 (W.D. Va. Feb. 26, 2013) (unpublished) ("The ALJ provided for the evaluation of [the plaintiff's] condition through consultative physicians. The ALJ had an adequately developed record from which he could evaluate the claim presented . . . ."); Jones v. Astrue, No. CIV. SKG-09-1683, 2011 WL 5833638, at *15 (D. Md. Nov. 18, 2011) (unpublished) ("[E]ven with the illegible records provided by [the] plaintiff's doctor, the record includes substantial information on each of [the] plaintiff's infirmities, . . . including hospitalization, doctor's visits, and prescriptions. Accordingly, the record was adequately developed to allow review and decision.").

In sum, Plaintiff's first assignment of error entitles her to no relief.

## 2. **Function-by-Function Assessment**

In Plaintiff's second and final issue on review, she contends that, in formulating the RFC, the ALJ failed "to carry out the

14

function-by-function assessment of [Plaintiff's] ability to sustain the basic mental demands of competitive, remunerative unskilled work" required by Security Ruling 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184 (July 2, 1996) ("SSR 96-8p"). (Docket Entry 11 at 9.) In that regard, Plaintiff asserts that the ALJ's "[f]ailure to complete the function-by-function assessment in this case caused the ALJ to overlook limitations in [Plaintiff's] capacity to stay on task, despite his earlier conclusion that [Plaintiff] has 'moderate difficulties in concentration, persistence, or pace [("CPP")].'" (Id. at 10.) According to Plaintiff, the ALJ's restrictions in the RFC to "'simple, routine, repetitive tasks in a non-production work setting [with] occasional interaction with coworkers and supervisors [and] incidental interaction with the public'" do not adequately address the ALJ's finding at step three of the SEP that Plaintiff suffered moderate deficits in CPP. (Docket Entry 11 at 10-11 (quoting and citing Tr. 20, and Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015) (observing that "[t]he ability to perform simple tasks differs from the ability to stay on task" and that "[o]nly the latter limitation would account for a claimant's limitation in [CPP]").) Plaintiff's contentions miss the mark.

15

Indeed, the Fourth Circuit has held that "the ability to perform simple tasks differs from the ability to stay on task" and that "[o]nly the latter limitation would account for a claimant's limitation in [CPP]." Mascio, 780 F.3d at 638. However, in this case, the ALJ included a restriction in the RFC "reasonably related to a moderate limitation in Plaintiff's ability to stay on task," Grant v. Colvin, No. 1:15CV00515, 2016 WL 4007606, at *6 (M.D.N.C. July 26, 2016) (unpublished), recommendation adopted, slip op. (M.D.N.C. Sept. 21, 2016) (Osteen, C.J.), by restricting Plaintiff to simple tasks <u>in a non-production work setting</u>" (Tr. 20 (emphasis added)). In that regard:

> [T]he weight of authority in the circuits that rendered the rulings undergirding the Fourth Circuit's holding in Mascio supports the view that the non-production restriction adopted in this case sufficiently accounts for [the p]laintiff's moderate limitation in CPP. Moreover, that approach makes sense. In Mascio, the Fourth Circuit held only that, when an ALJ finds moderate limitation in CPP, the ALJ must either adopt a restriction that addresses the "staying on task" aspect of CPP-related deficits (which a restriction to simple tasks does not, at least on its face) or explain why the CPP limitation of that particular claimant did not necessitate a further restriction regarding "staying on task." Where, as here, the ALJ has included a specific restriction that facially addresses "moderate" (not "marked" or "extreme," see 20 C.F.R. § 416.920a(c)(4)) limitation in the claimant's ability to stay on task, i.e., a restriction to "non-production oriented" work, Mascio does not require further explanation by the ALJ, at least absent some evidentiary showing by the claimant (not offered here) that he or she cannot perform even non-production-type work because of his or her particular CPP deficits.

16

Grant, 2016 WL 4007606, at *9; see also id. At *7-9 (discussing authority addressing "non-production" restrictions). Accordingly, the ALJ explicitly considered and accounted for Plaintiff's ability to "stay on task" in the RFC, which the Mascio court distinguished from the ability to perform simple tasks, see Mascio, 780 F.3d at 638.[10]

Accordingly, Plaintiff's second assignment of error fails as a matter of law.

### III. CONCLUSION

Plaintiff has not established an error warranting reversal or remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 10) be denied, that

---

[10] Moreover, in determining Plaintiff's mental RFC, the ALJ gave "great weight" to the opinions of the state agency psychologists. (Tr. 25.) Notably, each psychologist assessed Plaintiff with moderate difficulties in CPP (see Tr. 62, 76); however, they each concluded that Plaintiff remained able to sustain concentration and attention long enough to perform simple, routine, and repetitive tasks in a non-production environment (Tr. 66, 80). The ALJ's express reliance on these opinions regarding Plaintiff's ability to stay on task provides further support for his mental RFC and renders Mascio distinguishable. See Del Vecchio v. Colvin, No. 1:14CV116, 2015 WL 5023857, at *6 (W.D.N.C. Aug. 25, 2015) (unpublished) ("Here, unlike in Mascio, the ALJ discussed substantial record evidence in determining [the claimant's] mental RFC, and his explicit reliance on [the state agency consultant's] opinion adequately explains why [the claimant's] limitations in [CPP] did not translate into any additional restrictions . . . . Therefore, the Court is not left to guess at the ALJ's decision-making process.").

Defendant's Motion for Judgment on the Pleadings (Docket Entry 12) be granted, and that judgment be entered for Defendant.

/s/ L. Patrick Auld<br>**L. Patrick Auld**<br>**United States Magistrate Judge**

December 28, 2016